United States District Court
Southern District of Texas
**ENTERED**
September 20, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JAMIN STOCKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00248 |
| | § | |
| TDCJ STAFF, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

Plaintiff Jamin Stocker, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For the reasons set forth below and for purposes of screening, the undersigned respectfully recommends that the Court **RETAIN** Plaintiff's claims under the First Amendment (free exercise and free speech), the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et seq*., and the Equal Protection Clause against **Bobby Lumpkin** in his official capacity for declaratory and injunctive relief. The undersigned will order service on this defendant. The undersigned respectfully recommends further that:

- Defendant "TDCJ Staff" be **DISMISSED without prejudice**; and

- pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), Plaintiff's remaining claims against all other **Defendants** in their individual capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief.

## I.    JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the McConnell Unit in Beeville, Texas.  Plaintiff's allegations in this case arise in connection with his current housing assignment.

In his Amended Complaint, which is the operative pleading in this case, Plaintiff sues the following defendants:

- Bobby Lumpkin, the TDCJ's Director ("Director Lumpkin");

- Placido Samaniego, an Assistant Warden at the McConnell Unit ("Assistant Warden Samaniego");

- Candace Flannel, an Assistant Warden at the McConnell Unit ("Assistant Warden Flannel");

- Lieutenant Adan Cavazos, a McConnell Unit official ("Lt. Cavazos");

- Lieutenant Ildefonsa Barrera, a McConnell Unit official ("Lt. Barrera");

- Captain Cavazos, a McConnell Unit official ("Capt. Cavazos");

- Sergeant R. Martinez, a McConnell Unit official ("Sgt. Martinez");

- Sergeant Jerry Perez, a McConnell Unit official ("Sgt. Perez");[1]

- Sergeant Alaniz, a McConnell Unit official ("Sgt. Alaniz");

- Sergeant Gilbert Liserio, a McConnell Unit official ("Sgt. Liserio");

- Officer S. Balderas, a McConnell Unit official ("Officer Balderas");

- Officer M. Deleon, a McConnell Unit official ("Officer Deleon");

- Officer B. Cunningham, a McConnell Unit official ("Officer Cunningham"); and

- Sergeant Benavides, a McConnell Unit official ("Sgt. Benavides").

(D.E. 21, pp. 3-5).[2]  Plaintiff generally claims that these defendants violated his (1) First Amendment rights (free exercise, free speech and retaliation); (2) his Fourteenth Amendment equal protection rights (racial and religious discrimination); and (3) his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq*. (*Id.* at 3-5, 13-19, 21-24).  Plaintiff seeks declaratory, monetary, and injunctive relief.  (*Id.* at 25-27).

---

[1] Despite raising allegations against a McConnell Unit official named "Perez" in his Amended Complaint (D.E. 21, p. 8), More Definite Statement (D.E. 25, p. 4), and Second More Definite Statement (D.E. 29, pp. 2, 5-6, 8-9, 11, 13-14, 19, 23-24, 32), Plaintiff did not formally name Perez as a defendant in this case.  Plaintiff instead named Sgt. R Martinez and Sgt. J. Martinez as defendants in this case. (D.E. 21, p. 4).  In his More Definite Statement, however Plaintiff, indicated it was "Jerry Perez (not Martinez)" who committed certain discriminatory acts.  (D.E. 25, p. 4). After reviewing all of Plaintiff's pleadings, the undersigned finds it appropriate to enter a separate order substituting "Jerry Perez" in place of "Jerry Martinez" as a defendant in this case.

[2] After Plaintiff filed his original two-page letter complaint (D.E. 1), the Clerk docketed this action only against "TDCJ Staff."  Given that Plaintiff has identified numerous individual staff members in the operative Amended Complaint, the undersigned recommends that "TDCJ Staff" be dismissed without prejudice.

As directed by the Court, Plaintiff has filed a More Definite Statement and Second More Definite Statement in which he explains his claims in more detail. Plaintiff alleges the following pertinent facts in his Amended Complaint (D.E. 21), More Definite Statement (D.E. 25), and Second More Definite Statement (D.E. 29).

**A. Background allegations**

Plaintiff, an African-American male, actively practices a religious faith called "Spiritism." (D.E. 25, p. 1). Plaintiff describes his faith as follows:

> In general my faith acknowledges that my ancestors, the Divine Spirits and I are connected with each other[,] nature[,] and the universe. Some of the activities I do to practice my faith are meditation, yoga, vegan/vegetarian dieting. Some of the core tenants of my faith as it relates to growing my hair are: adherence to my faith affords me full control over all that pertains to my head; the locking and growth of my hair affords me protection against evil; commitment to my spiritual duty is expressed through the locking and growth of my hair; and the great spiritual responsibility is bestowed upon me for my expressed commitment.

*Id.* at 1-2. According to Plaintiff, growing his hair in "locs" means to grow is hair in dreadlocks. *Id.* at 2. Growing his hair in dreadlocks is essential to Plaintiff's practice of his faith. *Id.*

Plaintiff believes that TDCJ's grooming policy permits growing his hair in dreadlocks via "approved religious exemption applications." *Id.* Plaintiff's first application for a religious exemption went missing after he placed it in the mailbox of Chaplain Perry. *Id.* 2-3. Plaintiff and Chaplain Perry completed Plaintiff's second application. *Id.* at 3. This application, submitted to Warden Holmes, was never submitted to "Huntsville for review," and no reason was provided as to why it was not submitted. *Id.*

**B.  Allegations of Racial and Religious Discrimination**

Plaintiff claims he has been subjected to discrimination for: (1) "expressing [his] racial identity by wearing [his] style in a manner entirely consistent with African descendants['] culture;" and (2) "wearing [his] hair styled in accordance with [his] sincerely held religious beliefs." (D.E. 29, pp. 1, 7).  Plaintiff's claims of racial and religious discrimination relating to the wearing of his hair arise from the following incidents:

- On January 11, 2023, Assistant Warden Samaniego threatened to ban Plaintiff from eating in the chow hall and to take additional action – such as bringing disciplinary cases against him – to make Plaintiff hungry.  *Id.* at 1, 6-7, 11.

- On February 8, 2023, Lt. Barrera prevented Plaintiff from eating breakfast in the chow hall and was not provided an alternative meal.  *Id.* at 2, 6-7, 11.

- On February 27, 2023, Assistant Warden Flannel threatened Plaintiff with a disciplinary case if he did not "fix" his "extreme hairstyle."  *Id.*

- On March 7, 2023, Sgt. Perez barred Plaintiff from accessing the Commissary "when [he] was not commissary restricted via disciplinary procedures.  *Id.* at 2, 6-8, 11.

- On April 12, 2023, Sgt. Perez threatened Plaintiff with having his custody level reduced to G5.  *Id.* at 2, 6, 8, 11.

- On April 18, 2023, Assistant Warden Flannel initiated a disciplinary case against Plaintiff resulting in a punishment of 13 days loss of commissary and recreation as well as contact visit restrictions.  *Id.*

- On April 26, 2023, Sgt. Perez and Sgt. Martinez "used disciplinary procedures against [Plaintiff] as punishment."  *Id.*

- On April 28, 2023, Sgt. Perez subjected Plaintiff to harassment.  *Id.*

- On May 12, 2023, Sgt. Perez use the "n-word" when referring to Plaintiff. *Id.*

- On May 12, 2023, Sgt. Liserio initiated a disciplinary case against Plaintiff resulting in a punishment of 15 days commissary and cell restrictions. *Id.* at 3, 6, 8, 11.

- On June 1, 2023, Officer Deleon initiated a disciplinary case against Plaintiff resulting in a punishment of a 30-day commissary restriction. *Id.*

- On June 2, 2023, Sgt. Alaniz instigated a verbal and physical altercation with Plaintiff. *Id.*

- On June 8, 2023, Officer Balderas initiated a disciplinary case against Plaintiff resulting in a punishment of a 46-day commissary restriction and 30-day recreation restriction. *Id.*

- On June 8, 2023, Lt. Cavazos initiated a disciplinary case against Plaintiff resulting in a punishment of a 30-day commissary and recreations restrictions. *Id.* at 3, 6, 8-9, 11.

- On July 20, 2023, Sgt. Liserio initiated a disciplinary case against Plaintiff resulting in a punishment of a 30-day commissary and recreations restrictions. *Id.* at 3, 6, 9, 11.

- On July 23, 2023, Sgt. Liserio initiated a disciplinary case against Plaintiff resulting in a punishment of a 30-day commissary and recreations restrictions. *Id.*

- On July 24, 2023, Sgt. Liserio instigated a verbal and physical altercation with Plaintiff, telling Plaintiff to "cut that shit off your head." *Id.*

- On July 26, 2023, Lt. Cavazos initiated a disciplinary case against Plaintiff resulting in a punishment of a 46-day commissary restriction, 45 days recreations restriction, and reduction in Plaintiff's class level. *Id.* at 4, 6, 9, 11.

- On August 6, 2023, Assistant Warden Flannel conducted a classification hearing leading to a reduction in Plaintiff's custody level, loss of contact visits, significant limitations on his commissary food spending limit, and "a more violent, restrictive housing assignment." *Id.*

- On August 28, 2023, Sgt. Liserio "recklessly endangered, harassed and initiated a non-provoked use of force against [Plaintiff]." *Id.*

- On October 13, 2023, Officer Cunningham initiated a disciplinary case against Plaintiff resulting in a punishment of a reduction in Plaintiff's class level. *Id.*

- On November 1, 2023, Assistant Warden Flannel: (1) conducted a classification hearing leading to Plaintiff being remanded to G4 custody, while having his "six month long penalties restarted;" and (2) further warned Plaintiff that his next case would result in Plaintiff's custody level being reduced to G5. *Id.* at 4, 6, 10-11.

- On November 21, 2023, Sgt. Liserio initiated a disciplinary case against Plaintiff resulting in 25 days commissary and recreation restrictions. *Id.*

- On November 22, 2023: (1) Sgt. Liserio maliciously falsified government records in connection with the November 21, 2023 incident; and (2) Sgt. Perez failed to conduct a preliminary investigation with regard to the disciplinary proceeding brought against Plaintiff. *Id.* at 5, 10, 19.

- On December 17, 2023, Capt. Cavazos initiated a disciplinary proceeding against Plaintiff resulting in unspecified punishment. *Id.* at 5-6, 10-11.

- On December 22, 2023, Sgt. Liserio initiated a disciplinary case against Plaintiff resulting in Plaintiff being remanded to G4 custody status. *Id.*

- On December 22, 2023, Sergeant Benavides failed to conduct a proper investigation into the incident occurring earlier on this day, informing Plaintiff that his religion would not protect him. *Id.*

### C. Allegations of Retaliation

Plaintiff alleges that, in violation of his First Amendment rights, he was the victim of retaliation in the following incidents for wearing his hair styled in a manner consistent with his racial identity and religious beliefs:

- On January 11, 2023, after being informed his hair was worn in accordance with his religious belief, Assistant Warden Samaniego threatened to ban Plaintiff from eating in the chow hall and to take additional action – such as bringing disciplinary cases against him – to make Plaintiff hungry. *Id.* at 13.

- On February 8, 2023, after being informed his hair was worn in accordance with his religious belief, Lt. Barrera prevented Plaintiff from eating breakfast in the chow hall and was not provided an alternative meal. *Id.*

- On February 27, 2023, after being informed his hair was worn in accordance with his religious belief, Assistant Warden Flannel threatened Plaintiff with a disciplinary case if he did not "fix" his "extreme hairstyle." *Id.*

- On March 7, 2023, after being informed his hair was worn in accordance with his religious belief, Sgt. Perez barred Plaintiff from accessing the Commissary "when [he] was not commissary restricted via disciplinary procedures. *Id.* at 13-14.

- On April 12, 2023, after being informed his hair was worn in accordance with his religious belief, Sgt. Perez threatened Plaintiff with having his custody level reduced to G5. *Id.* at 14.

- On April 18, 2023, after being informed his hair was worn in accordance with his religious belief, Assistant Warden Flannel initiated a disciplinary case against Plaintiff resulting in a punishment of 13 days loss of commissary and recreation as well as contact visit restrictions. *Id.*

- On April 26, 2023, after being informed his hair was worn in accordance with his religious belief, Sgt. Perez and Sgt. Martinez "used disciplinary procedures against [Plaintiff] as punishment." *Id.*

- On April 28, 2023, after being informed his hair was worn in accordance with his religious belief, Sgt. Perez subjected Plaintiff to harassment. *Id.* at 15.

- On May 12, 2023, after being informed his hair was worn in accordance with his religious belief, Sgt. Perez used the "n-word" when referring to Plaintiff. *Id.*

- On May 12, 2023, after being informed his hair was worn in accordance with his religious belief, Sgt. Liserio initiated a disciplinary case against Plaintiff resulting in a punishment of 15 days commissary and cell restrictions. *Id.*

- On June 1, 2023, after being informed his hair was worn in accordance with his religious belief, Officer Deleon initiated a disciplinary case against Plaintiff resulting in a punishment of a 30-day commissary restriction. *Id.* at 15-16.

- On June 2, 2023, after being informed his hair was worn in accordance with his religious belief, Sgt. Alaniz instigated a verbal and physical altercation with Plaintiff. *Id.* at 16.

- On June 8, 2023, after being informed his hair was worn in accordance with his religious belief, Officer Balderas initiated a disciplinary case against Plaintiff resulting in a punishment of a 46-day commissary restriction and 30-day recreation restriction. *Id.*

- On June 8, 2023, after being informed his hair was worn in accordance with his religious belief, Lt. Cavazos initiated a disciplinary case against Plaintiff resulting in a punishment of a 30-day commissary and recreations restrictions. *Id.*

- On July 20, 2023, after being informed his hair was worn in accordance with his religious belief, Sgt. Liserio initiated a disciplinary case against Plaintiff resulting in a punishment of a 30-day commissary and recreations restrictions. *Id.* at 17.

- On July 23, 2023, after being informed his hair was worn in accordance with his religious belief, Sgt. Liserio initiated a disciplinary case against Plaintiff

resulting in a punishment of a 30-day commissary and recreations restrictions. *Id.*

- On July 24, 2023, after being informed his hair was worn in accordance with his religious belief, Sgt. Liserio instigated a verbal and physical altercation with Plaintiff, telling Plaintiff to "cut that shit off your head." *Id.*

- On July 26, 2023, after being informed his hair was worn in accordance with his religious belief, Lt. Cavazos initiated a disciplinary case against Plaintiff resulting in a punishment of a 46-day commissary restriction, 45 days recreations restriction, and reduction in Plaintiff's class level. *Id.* at 17-18.

- On August 6, 2023, after being informed his hair was worn in accordance with his religious belief, Assistant Warden Flannel conducted a classification hearing leading to a reduction in Plaintiff's custody level, loss of contact visits, significant limitations on his commissary food spending limit, and "a more violent, restrictive housing assignment." *Id.* at 18.

- On August 28, 2023, after being informed his hair was worn in accordance with his religious belief, Sgt. Liserio "recklessly endangered, harassed and initiated a non-provoked use of force against [Plaintiff]." *Id.*

- On October 13, 2023, after being informed his hair was worn in accordance with his religious belief, Officer Cunningham initiated a disciplinary case against Plaintiff resulting in a punishment of a reduction in Plaintiff's class level. *Id.*

- On November 1, 2023, after being informed his hair was worn in accordance with his religious belief, Assistant Warden Flannel: (1) conducted a classification hearing leading to Plaintiff being remanded to G4 custody, while having his "six month long penalties restarted;" and (2) further warned Plaintiff that his next case would result in Plaintiff's custody level being reduced to G5. *Id.* at 18-19.

- On November 21, 2023, after being informed his hair was worn in accordance with his religious belief, Sgt. Liserio initiated a disciplinary case against Plaintiff resulting in 25 days commissary and recreation restrictions. *Id.* at 19.

- On November 22, 2023, after being informed his hair was worn in accordance with his religious belief: (1) Sgt. Liserio maliciously falsified government records in connection with the November 21, 2023 incident; and (2) Sgt. Perez failed to conduct a preliminary investigation with regard to the disciplinary proceeding brought against Plaintiff. *Id.*

- On December 17, 2023,  after being informed his hair was worn in accordance with his religious belief, Capt. Cavazos initiated a disciplinary proceeding against Plaintiff resulting in unspecified adverse penalties. *Id.* at 19-20.

- On December 22, 2023, after being informed his hair was worn in accordance with his religious belief, Sgt. Liserio initiated a disciplinary case against Plaintiff resulting in Plaintiff being remanded to G4 custody status. *Id.* at 20.

- On December 22, 2023, after being informed his hair was worn in accordance with his religious belief, Sergeant Benavides failed to conduct a proper investigation into the incident occurring earlier on this day, informing Plaintiff that his religion would not protect him. *Id.*

- On February 26, 2024, Capt. Cavazos maliciously instructed Sgt. Gonzalez-Diaz to limit Plaintiff's access to the dayroom and deny Plaintiff access to showers.  Capt. Cavazos further made an unspecified "disparaging remark about Plaintiff's hair which he knew was being worn in accordance with Plaintiff's religious beliefs. *Id.*

### D. First Amendment and RLUIPA Allegations

Plaintiff alleges that several defendants violated his First Amendment (free exercise and free speech) and RLUIPA rights in the following incidents for visibly wearing his hair in dreadlocks in accordance with his religious beliefs and communicating his religious adherence and heritage:

- On January 11, 2023, Assistant Warden Samaniego threatened to ban Plaintiff from eating in the chow hall and to take additional action – such as bringing disciplinary cases against him – to make Plaintiff hungry. *Id.* at 21, 32.

- On February 8, 2023, Lt. Barrera prevented Plaintiff from eating breakfast in the chow hall and was not provided an alternative meal.  *Id.*

- On February 27, 2023, Assistant Warden Flannel threatened Plaintiff with a disciplinary case if he did not "fix" his "extreme hairstyle."  *Id.* at 21, 23, 32.

- On March 7, 2023, Sgt. Perez barred Plaintiff from accessing the Commissary "when [he] was not commissary restricted via disciplinary procedures.  *Id.* at 23, 32.

- On April 12, 2023, Sgt. Perez threatened Plaintiff with having his custody level reduced to G5.  *Id.*

- On April 18, 2023, Assistant Warden Flannel initiated a disciplinary case against Plaintiff resulting in a punishment of 13 days loss of commissary and recreation as well as contact visit restrictions.  *Id.* at 23-24, 32.

- On April 26, 2023, Sgt. Perez and Sgt. Martinez "used disciplinary procedures against [Plaintiff] as punishment."  *Id.* at 24, 32.

- On April 28, 2023, Sgt. Perez subjected Plaintiff to harassment.  *Id.*

- On May 12, 2023, Sgt. Perez used the "n-word" when referring to Plaintiff.  *Id.*

- On May 12, 2023, Sgt. Liserio initiated a disciplinary case against Plaintiff resulting in a punishment of 15 days commissary and cell restrictions.  *Id.* at 24-25, 32.

- On June 1, 2023, Officer Deleon initiated a disciplinary case against Plaintiff resulting in a punishment of a 30-day commissary restriction.  *Id.* at 25, 32.

- On June 2, 2023, Sgt. Alaniz instigated a verbal and physical altercation with Plaintiff.  *Id.*

- On June 8, 2023, Officer Balderas initiated a disciplinary case against Plaintiff resulting in a punishment of a 46-day commissary restriction and 30-day recreation restriction.  *Id.* at 25-26, 32.

- On June 8, 2023, Lt. Cavazos initiated a disciplinary case against Plaintiff resulting in a punishment of a 30-day commissary and recreations restrictions. *Id.* at 26, 32.

- On July 20, 2023, Sgt. Liserio initiated a disciplinary case against Plaintiff resulting in a punishment of a 30-day commissary and recreations restrictions. *Id.*

- On July 23, 2023, Sgt. Liserio initiated a disciplinary case against Plaintiff resulting in a punishment of a 30-day commissary and recreations restrictions. *Id.* at 26-27, 32.

- On July 24, 2023, Sgt. Liserio instigated a verbal and physical altercation with Plaintiff, telling Plaintiff to "cut that shit off your head." *Id.* at 27, 32.

- On July 26, 2023, Lt. Cavazos initiated a disciplinary case against Plaintiff resulting in a punishment of a 46-day commissary restriction, 45 days recreations restriction, and reduction in Plaintiff's class level. *Id.*

- On August 6, 2023, Assistant Warden Flannel conducted a classification hearing leading to a reduction in Plaintiff's custody level, loss of contact visits, significant limitations on his commissary food spending limit, and "a more violent, restrictive housing assignment." *Id.* at 27-28, 32.

- On August 28, 2023, Sgt. Liserio "recklessly endangered, harassed and initiated a non-provoked use of force against [Plaintiff]." *Id.* at 28, 32.

- On October 13, 2023, Officer Cunningham initiated a disciplinary case against Plaintiff resulting in a punishment of a reduction in Plaintiff's class level. *Id.*

- On November 1, 2023, Assistant Warden Flannel: (1) conducted a classification hearing leading to Plaintiff being remanded to G4 custody, while having his "six month long penalties restarted;" and (2) further warned Plaintiff that his next case would result in Plaintiff's custody level being reduced to G5. *Id.* at 28-29, 32.

- On November 21, 2023, Sgt. Liserio initiated a disciplinary case against Plaintiff resulting in 25 days commissary and recreation restrictions. *Id.* at 29, 32.

- On November 22, 2023: (1) Sgt. Liserio maliciously falsified government records in connection with the November 21, 2023 incident; and (2) Sgt. Perez failed to conduct a preliminary investigation with regard to the disciplinary proceeding brought against Plaintiff. *Id.*

- On December 17, 2023, Capt. Cavazos initiated a disciplinary proceeding against Plaintiff resulting in unspecified adverse penalties. *Id.*

- On December 22, 2023, Sgt. Liserio initiated a disciplinary case against Plaintiff resulting in Plaintiff being remanded to G4 custody status. *Id.* at 29-30, 32.

- On December 22, 2023, Sergeant Benavides failed to conduct a proper investigation into the incident occurring earlier on this day, informing Plaintiff that his religion would not protect him. *Id.* at 30, 32.

- On February 26, 2024, Capt. Cavazos maliciously instructed Sgt. Gonzalez-Diaz to limit Plaintiff's access to the dayroom and deny Plaintiff access to showers. Capt. Cavazos further made an unspecified "disparaging remark about Plaintiff's hair which he knew was being worn in accordance with Plaintiff's religious beliefs. *Id.*

## III.  GOVERNING LAW

### A.  Legal Standard for Screening of Plaintiff's Action

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis*

complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint,

taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed.  *Id.*

### B.  Relevant law regarding 42 U.S.C. § 1983

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action."  *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  There is no vicarious or *respondeat superior* liability of supervisors under section 1983.  *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987).  *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

## IV.    DISCUSSION

### A.  The First Amendment, RLUIPA, and Equal Protection

#### (1)  General Legal Principles

The First Amendment provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof.  U.S. Const., amend I.

While prisoners retain their First Amendment rights, including the right to free exercise of religion and limited rights to free speech, they only retain those rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). As with a free exercise claim, to succeed on a free speech claim, a prisoner "must do more than point to the existence of a generic First Amendment right[; h]e must also establish that he exercised that right in a *manner* consistent with his status as a prisoner." *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 864 (5th Cir. 2004) (emphasis in original).

However, "these [First Amendment] rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). "Accordingly, prisoners and their correspondents enjoy the protections of the First Amendment except to the extent that prison regulations curtailing those protections are 'reasonably related to legitimate penological interests.'" *Prison Legal News v. Livingston*, 683 F.3d 201, 204 (5th Cir. 2012) (quoting *Thornburgh*, 490 U.S. at 404); *Brewer v. Wilkinson*, 3 F.3d 816, 820-21, 825-26 (5th Cir. 1993).

In evaluating the reasonableness of a prison regulation, four factors are considered: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates," (3) "the impact accommodation ... will have on guards and other inmates, and on the allocation of prison resources generally," (4) whether there are "ready alternatives that could fully

accommodate[] the prisoner's rights at *de minimis* cost to valid penological interests."
*Turner v. Safley*, 482 U.S. 78, 89-91 (1987) (internal citations and quotation marks
omitted). While *Turner's* standard encompasses four factors, the Fifth Circuit has noted
that "rationality is the controlling factor, and a court need not weigh each factor equally."
*Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008) (citation
omitted).

The RLUPIA, in turn, "poses a far greater challenge than does *Turner* to prison
regulations that impinge on inmates' free exercise of religion." *Freeman*, 369 F.3d at 858
n.1. Congress has also mandated that courts construe the RLUPIA "in favor of a broad
protection of religious exercise," to the maximum extent permitted by law. 42 U.S.C. §
2000cc.

The Fifth Circuit Court of Appeals recently issued *Lozano v. Collier*, 98 F.4th 614
(5th Cir. 2024), in which the circuit court clarified the applicable standards for reviewing
RLUIPA claims in this circuit. The *Lozano* court summarized RLUIPA's burden-shifting
framework:

> The plaintiff must first show that the government has substantially burdened
> the plaintiff's religious exercise grounded in a sincerely held religious belief
> ....; *Holt v. Hobbs*, 574 U.S. 352, 360-61 ... (2015). "[A] government action
> or regulation creates a 'substantial burden' on a religious exercise if it truly
> pressures the adherent to significantly modify his religious behavior and
> significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559,
> 570 (5th Cir. 2004). "[T]he effect of a government action or regulation is
> significant when it either (1) influences the adherent to act in a way that
> violates his religious beliefs, or (2) forces the adherent to choose between,
> on the one hand, enjoying some generally available, non-trivial benefit, and,
> on the other hand, following his religious beliefs." *Id.*

> Once the plaintiff has established a substantial burden, the burden shifts to the government to prove that the relevant policy is the least restrictive means of [] furthering a compelling government interest. *Holt*, 574 U.S. at 362 …. RLUIPA "requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Id.* … Additionally, " 'the least-restrictive-means standard is exceptionally demanding,' and it requires the government to 'show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party.'" *Id.* at 364-65 …. "If a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Id.* at 365 ….

*Lozano*, 98 F.4th at 621 (footnote and citations omitted and cleaned up).

Lastly, the Equal Protection Clause of the Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks and citations omitted); *see Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016).  To establish an equal protection claim, a plaintiff must first demonstrate that "two or more classifications of similarly situated persons were treated differently." *Duarte*, 858 F.3d at 353 (internal quotation marks and citations omitted).  If a suspect class (such as race or religion) or a fundamental right is implicated, the courts apply "strict scrutiny."  *Id.* at 353-54. If not, the courts apply "rational basis review" and will uphold the classification if it bears a "rational relation to a legitimate governmental purpose."  *Id.* at 354.

Further, to establish an Equal Protection Clause violation, a plaintiff must prove "purposeful discrimination resulting in a discriminatory effect among persons similarly

situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (internal quotation marks and citation omitted); *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007). The Equal Protection Clause "does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *Wood*, 836 F.3d at 538-39 (internal quotation marks and citation omitted).

### (2)  *Analysis*

Plaintiff's statements reflect his sincere belief in growing his hair long in dreadlocks in accordance with the core tenants of his Spiritism religious faith. (D.E. 25, p. 1). Plaintiff further claims that TDCJ's grooming policy places a substantial burden on his ability to practice his religion by: (1) effectively discouraging him from practicing his Spiritism faith; and (2) interfering with his ability to communicate his religious adherence and heritage. (D.E. 29, pp. 30-31). Plaintiff's allegations are sufficient at this stage to warrant further factual development of both his RLUIPA and First Amendment claims (free exercise and free speech).

With respect to equal protection claims of racial discrimination, Plaintiff asserts that: (1) he was treated differently from other inmates through penalties imposed on him based on his race; (2) inmates who are Native American are allowed to grow their hair long consistent with their culture without repercussions; and (3) similarly-situated black inmates at other TDCJ units "have been permitted to grow their hair in adherence to their heritage without incident." (D.E. 29, pp. 5-6). With respect to his equal protection claim of

religious discrimination claims, Plaintiff asserts that: (1) he was treated differently in numerous incidents "by being significantly pressured to forego precepts, and engaging in religious conduct; (2) his right to religious expression through the growing of his hair was significantly burdened; and (3) the infringement of his religious expression was not related to a legitimate penological interest  especially when Native American inmates were permitted to grow their hair long in accordance with their religious beliefs.  *Id.* at 10-11. Plaintiff's allegations have stated plausible equal protection claims for racial and religious discrimination.

Although not expressly articulated in his Amended Complaint and more definite statements, it is apparent Plaintiff seeks only injunctive and declaratory relief against Director Lumpkin in his official capacity and monetary relief against the remaining defendants.  In his Amended Complaint, Plaintiff states that he seeks nominal and punitive damages from every defendant "excluding Lumpkin."  (D.E. 21, pp. 25-26).  Plaintiff further specifies in his Second More Definite Statement that he seeks to hold the defendants identified in each incident described above in their individual capacities only.  (D.E. 29, pp. 6, 12, 31).  While seeking to hold Director Lumpkin responsible for promulgating an unconstitutional grooming policy, Plaintiff does not specify that Director  participated in any of the incidents described above.

Throughout his Second More Definite Statement, Plaintiff claims that Director Lumpkin's "promulgation of an unconstitutional religious policy" caused the violations of his First Amendment, RLUIPA, and equal protection rights in several incidents.  (D.E. 29,

pp. 5, 10, 30-31).  For purposes of injunctive relief, it is clear Plaintiff believes Director Lumpkin would be the appropriate official to provide the requested injunctive relief should Plaintiff prevail as to his First Amendment, RLUIPA, or equal protection claims. Accordingly, the undersigned recommends retaining these claims against Director Lumpkin in his official capacity for injunctive and declaratory relief.

Plaintiff further seeks to raise his First Amendment, RLUIPA, and equal protection claims against all defendants (other than Director Lumpkin) in their individual capacities through the actions of: (1) Assistant Warden Samaniego on January 11, 2023; (2) Lt. Barrera on February 8, 2023; (3) Assistant Warden Flannel on February 27, 2023, April 18, 2023, August 6, 2023, November 1, 2023; (4) Sgt. Perez on March 7, 2023, April 23, 2023, April 26, 2023, April 28, 2023, May 12, 2023, and November 22, 2023; (5) Sgt. Martinez on April 26, 2023; (6) Sgt. Liserio on May 12, 2023, July 20, 2023, July 23, 2023, July 24, 2024, August 28, 2023, November 21, 2023, November 22, 2023, and December 22, 2023; (7) Officer Deleon on June 1, 2023; (8) Sgt. Alaniz on June 2, 2023; (9) Officer Balderas on June 8, 2023; (10) Lt. Cavazos on June 8, 2023, July 26, 2024; (11) Officer Cunningham on October 13, 2023; (12) Capt. Cavazos on December 17, 2023 and February 26, 2024; and (13) Sgt. Benavides on December 22, 2023.

Because each of Plaintiff's complained-of actions are attributable to TDCJ's grooming policy, his First Amendment, RLUIPA, and equal protection claims against the individual defendants are subject to dismissal.  *See Thomas v. Texas Dep't of Crim. Just.*, No. 2:23-CV-142, 2023 WL 7169570, at *6 (S.D. Tex. Sep. 11, 2023) (Libby, Mag. J.),

*adopted*, 2023 WL 7167162 (S.D. Tex. Oct. 31, 2023) (Ramos, J.).  In addition, Plaintiff's

allegations of discriminatory intent on the part of each individual defendant are conclusory.

*See id.*  One incident, however, warrants further comment.  Plaintiff alleges that, on May

12, 2023, Sgt. Perez use the "n-word" when referring to Plaintiff.  (D.E. 29, pp. 2, 6, 8, 11).

"Though inmates 'have the constitutional right to be free of racial discrimination,' mere

allegations of verbal abuse or epithets, reprehensible though they may be, do not amount

to a cognizable constitutional violation under Section 1983."  *Matthews v. LeBlanc*, No.

21-40086, 2022 WL 2951759 (5th Cir. Jul. 26, 2022) (quoting *Bentley v. Beck*, 625 F.2d

70, 70-71 (5th Cir. 1980) (per curiam)).  Further, with regard to Sgt. Perez's alleged use of

a racial epithet on May 12, 2023, Plaintiff does not allege in any detail that Sgt. Perez

otherwise took an adverse action against him that day.

  Accordingly, the undersigned recommends that Plaintiff's First Amendment,

RLUIPA, and equal protection claims against the individual defendants be dismissed as

frivolous and/or for failure to state a claim for relief.

### B. Retaliation

#### (1) General Legal Principles

  "An action motivated by retaliation for the exercise of a constitutionally protected

right is actionable, even if the act, when taken for a different reason, might have been

legitimate."  *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995).  The purpose of allowing

retaliation claims under § 1983 is to protect against retaliatory actions that may chill an

individual's exercise of constitutional rights.  *Perry v. Sindermann*, 408 U.S. 593, 597

(1972).  However, "[r]etaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 685 (5th Cir. 2006).

The Fifth Circuit has recognized that the "prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties." *Woods*, 60 F.3d at 1166.  Claims of retaliation "must therefore be viewed with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."  *Id.*  Thus, prisoners' claims of retaliation are "carefully scrutinized by the courts." *Toson v. Freeman*, No. 1:22-cv-00085, 2023 WL 4998063, at *5 (N.D. Tex. July 24, 2023) (quoting *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010)).

To state a claim for retaliation, a prisoner must allege "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation," a showing that but for the retaliatory motive, the complained-of action would not have occurred.  *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).  An inmate must allege more than his personal belief that he is the victim of retaliation.  *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).  In addition, "[m]ere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim."  *Jones*, 188 F.3d at 325.

Instead, "[t]he inmate must produce direct evidence of motivation, or the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (cleaned up). In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Id.*

### (2) Analysis

Plaintiff has alleged that he was a victim of retaliation in a variety of ways through the actions of: (1) Assistant Warden Samaniego on January 11, 2023; (2) Lt. Barrera on February 8, 2023; (3) Assistant Warden Flannel on February 27, 2023, April 18, 2023, August 6, 2023, November 1, 2023; (4) Sgt. Perez on March 7, 2023, April 23, 2023, April 26, 2023, April 28, 2023, May 12, 2023, and November 22, 2023; (5) Sgt. Martinez on April 26, 2023; (6) Sgt Liserio on May 12, 2023, July 20, 2023, July 23, 2023, July 24, 2024, August 28, 2023, November 21, 2023, November 22, 2023, and December 22, 2023; (7) Officer Deleon on June 1, 2023; (8) Sgt. Alaniz on June 2, 2023; (9) Officer Balderas on June 8, 2023; (10) Lt. Cavazos on June 8, 2023, July 26, 2024; (11) Officer Cunningham on October 13, 2023; (12) Capt. Cavazos on December 17, 2023 and February 26, 2024; and (13) Sgt. Benavides on December 22, 2023. According to Plaintiff, these defendants participated in various incidents that denied Plaintiff from eating in the chow hall, threatened Plaintiff with disciplinary action or custody-level reductions, barred Plaintiff from the accessing the Commissary, initiated disciplinary cases against him resulting in punishments, harassed Plaintiff, used racial slurs against Plaintiff, had verbal and physical

altercations with Plaintiff, conducted classification hearings leading to reductions in Plaintiff's custody classification level, falsified government records in connection with a disciplinary action brought against Plaintiff, failed to conduct proper investigations in connection with disciplinary hearings, and limited Plaintiff's access to the day room and showers on one occasion. (D.E. 29, pp. 12-20).

Plaintiff's claims of retaliation, however, are entirely conclusory. His retaliation claims all involve TDCJ's grooming policy which Plaintiff characterizes as unconstitutional. While Plaintiff construes the individual defendants' conduct as retaliatory, Plaintiff has not stated sufficient facts to give rise to any claim for retaliation. Plaintiff alleges that TDCJ's grooming policy permits dreadlocks through approved religious exemption applications. (D.E. 25, p. 2). However, Plaintiff's allegations reflect that he did not obtain an exemption to wear his hair in dreadlocks at any relevant time. *Id.* at 2-3. Plaintiff's allegations, therefore, do not create an inference that any of the defendant's actions were the result of retaliation rather than enforcement of TDCJ's grooming policy.

While Plaintiff's allegations indicate he suffered a variety of adverse acts from the individual defendants, he essentially acknowledges his refusal to comply with TDCJ's grooming policy that constituted the underlying justification for their actions. In other words, Plaintiff cannot show that, but for the individual defendants' retaliatory motives, the adverse actions would not have occurred. All of the adverse actions occurred in the wake of Plaintiff's refusal to follow TDCJ's grooming policy. Plaintiff further has not

alleged any of the disciplinary sanctions imposed against him or adverse classification decisions have been overturned on appeal or otherwise reversed.  Even when accepting Plaintiff's allegations as true, his retaliation claims are unsustainable because the individual defendants' conduct cannot be attributable solely to a retaliatory motive.  Accordingly, the undersigned recommends that Plaintiff's claims against the individual defendants be dismissed as frivolous and/or for failure to state a claim for relief.

## V.    RECOMMENDATION

For the reasons stated above and for purposes of § 1915A and §1915(e)(2), the undersigned respectfully recommends that For the reasons set forth below and for purposes of screening, the undersigned respectfully recommends that the Court **RETAIN** Plaintiff's claims under the First Amendment (free exercise and free speech), the RLUIPA, and the Equal Protection Clause against **Director Bobby Lumpkin** in his official capacity for declaratory and injunctive relief.  The undersigned will order service on this defendant by separate order.  The undersigned respectfully recommends further that:

- Defendant "TDCJ Staff" be **DISMISSED without prejudice**; and

- pursuant to §§ 1915(e)(2)(B) and 1915A(b)(1), Plaintiff's remaining claims against all other **Defendants** in their individual capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief.

Respectfully submitted on September 20, 2024.

Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).